[No. 28126. Department Two. April 9, 1941.]

MARGUERITE LYNCH BISHOP, *Respondent*, v. DAN J. LYNCH, *Appellant*.[1]

[1]Reported in 111 P. (2d) 996.

*Vanderveer, Bassett & Geisness,* for appellant.

*Chas. R. Lewis* and *J. W. Graham,* for respondent.

BEALS, J.—Jeremiah and Mary Lynch, with their family, resided in Mason county for many years. They had several children, Timothy, Dan, Jeremiah, and Margaret, who married James Cashman. Timothy Lynch married, his wife's Christian name being Margaret, and had three children, Marguerite, Dan J., and Kathleen, who died unmarried in 1917. Mary Lynch, the wife of Jeremiah, senior, died intestate in 1911. Jeremiah died testate in 1912. Timothy Lynch died intestate in 1913. The estates of Jeremiah, Mary, and Timothy were probated, and were apparently closed by a consolidated decree of distribution. Margaret Cashman died, and her estate was probated and closed. Kathleen Lynch's estate was probated and closed.

Margaret Lynch, the widow of Timothy, died testate, January 11, 1937, and her estate was probated and closed.

Jeremiah, senior, and Mary, his wife, owned considerable property, and the same was distributed, as to some real estate, in undivided portions. One of the tracts with which we are concerned is described as government lot 4, section 10, township 19 north, range 3 west, which tract will be referred to herein as lot 4.

Marguerite Lynch married Frank Bishop, and during the year 1938, instituted this action against her brother, Dan J. Lynch, and her uncle Jeremiah Lynch, asking for a partition of certain property of which plaintiff and defendants were the owners as tenants in common, and also asking for an accounting. The accounting phase of the litigation is not involved in this appeal. For some years prior to the institution of this action, plaintiff owned a small undivided interest—1/36 or 2/36—in lot 4. Her interest was later increased, as hereinafter noted.

July 22, 1927, Dan J. Lynch conveyed to his mother, Margaret Lynch, by deed recorded the same day, his entire interest in several tracts of land in Mason county, owned by the family. February 16, 1929, Margaret Lynch, then a widow, signed and acknowledged a deed reconveying to her son, Dan J. Lynch, the property previously conveyed to her by her son. This deed was filed for record September 27, 1939. The question of whether or not this deed was ever delivered is important in connection with this litigation. The trial court was of the opinion that the evidence failed to show that the deed from Margaret Lynch to her son, Dan J. Lynch, had ever been delivered, and, in determining the ownership of the property described in that instrument, disregarded the same.

As to lot 4, the trial court found that plaintiff was

the owner of an undivided 37/72 interest, and that defendant Dan J. Lynch was the owner of an undivided 35/72 interest, and directed that the tract be partitioned in such a manner that Dan J. Lynch should receive no advantage or benefit from the enhancement of the value of the tract by the erection of buildings thereon by plaintiff at her own expense.

From the order directing partition, defendant Dan J. Lynch has appealed, assigning error upon the refusal of the trial court to hold effective and valid the deed above referred to from his mother, Margaret Lynch, to himself; upon a ruling of the trial court to the effect that his claim under that deed constituted a collateral attack upon the decree of distribution entered in his mother's estate; and upon the determination of the respective interests in various parcels of property made by the court as affected by the court's refusal to give effect to the deed referred to. Error is also assigned upon that portion of the order which directs that lot 4 be partitioned in such a manner that Dan J. Lynch shall receive no benefit from the enhanced value of the property by reason of the improvements thereon.

Defendant Jeremiah Lynch did not appeal, nor has he filed any appearance or brief in this court, and apparently is not interested in the questions here presented.

Respondent has moved to dismiss the appeal on the ground that the same was prematurely taken, no final decree of partition having yet been entered. The order appealed from declares and adjudicates the respective interests of the parties to this action in several tracts of real estate. It appoints three referees to partition the real and personal property, save one tract which was ordered sold as not subject to partition, and directs that lot 4 be so partitioned as to afford appellant no advantage or benefit on account of the improve-

ments placed on the property by respondent at her own expense. The decree further adjudged that respondent is entitled to a general accounting from appellant. Respondent argues that the order is not appealable, as the referees have made no report, and that, upon appeal from a decree confirming their report when made, an appeal will lie which will bring before this court for review all the matters which appellant seeks to review by the appeal which he has taken.

The decree finally and definitely adjudicates the respective interests of the parties to this action in several different tracts of land. As to such matters, the order determines the respective rights of the parties. The motion to dismiss the appeal is denied. *Mood v. Mader,* 162 Wash. 83, 298 Pac. 329. The case of *Hamlin v. Hamlin,* 90 Wash. 467, 156 Pac. 393, relied upon by respondent, is not in point here.

We shall first discuss the matter of the delivery of the deed to Dan J. Lynch. It appears that Margaret Lynch, the mother of appellant and respondent, left a will naming appellant as executor thereof. The executor prepared his inventory of the property left by his mother, including therein, as property of the estate, the property which was described in the deed above referred to, dated February 16, 1929, from his mother to himself. In due course, the executor filed his final account and petition for distribution. October 2, 1937, a decree was entered approving the final account and distributing the property in accordance with the executor's petition for distribution, all without regard to the deed. The decree distributed all of Margaret Lynch's interest in a tract of land in Thurston county to respondent, all of her interest in Mason county real estate and all other property, real and personal, belonging to the estate, in equal shares to respondent and appellant.

Appellant was called by respondent as an adverse witness, and later testified as a witness on his own behalf. During the course of his testimony, while called to the stand by respondent, and while under cross-examination by his own counsel, he identified a deed which his mother had executed, which was exhibited to him and marked for identification, stating that the same bore his mother's signature. Asked when and under what circumstances he had received this deed, objection was made upon the ground that the question concerned a transaction between the witness and a deceased person, and was objectionable under Rem. Rev. Stat., § 1211 [P. C. § 7722]. The trial court overruled the objection, whereupon the following occurred:

"Q. Who gave it to you? A. My mother. Q. When? A. Oh, sometime in '27. Q. And she died in '30? A. Yes. Q. You said '27. It is dated '29. You had better look at it. A. It was delivered to me sometime in '29. Q. It was? A. Yes."

Further objection was interposed by respondent, upon the ground that the deed covered property which appellant, as executor of his mother's will, had inventoried in her estate as property belonging thereto, the property having been included in the final decree of distribution. The court then sustained respondent's objection, and the deed was not received in evidence. The following then occurred:

"Q. Where has this deed been since its delivery to you? A. It was in my desk in my room. Q. With other papers? A. Yes."

Later, while appellant was testifying as a witness on his own behalf, the deed was again exhibited to him, appellant testifying as follows:

"Q. I am going to show you now defendant's identification number 1 and ask you if you saw your mother execute the instrument. A. Yes, I brought her to town

the day she executed the deed. Q. Where was it executed? A. In Julia Waldrip Ker's office. Q. What was done with it when it was executed? A. She gave it to me. Q. What did you do with it? A. I kept it in my possession. Q. Has it been out of your possession until you gave it to me to record? A. No, it hasn't."

Respondent then interposed an objection when the deed was offered in evidence, upon the ground that the deed constituted a collateral attack upon the decree of distribution, whereupon the court stated that, when it had previously ruled on the matter, the deed was refused largely on the ground that there had been no delivery thereof, and after some further discussion, stated that the deed would be admitted in evidence, with the understanding that its legal effect would be considered by the court at the final disposition of the case.

Mrs. Ker, the attorney at whose office appellant testified that the deed was executed, and who certified the grantor's acknowledgment thereof, was not called as a witness by either party.

As above stated, appellant testified that, since the execution of the deed, it had been continuously in his possession, in his desk with other papers. Respondent testified that, a day or two after her mother's funeral, she took two metal boxes, which her mother had used for safekeeping of papers, from her mother's bureau, into appellant's room, where she and appellant opened the boxes and examined the contents thereof, their main object being to determine whether or not their mother had left a will. The witness first testified that they found their mother's will in the box, but later stated that she was not sure whether they found the will at that time or whether it was later discovered in the custody of the attorney who had prepared it, John S. Lynch, Esquire. The witness testified positively that

the deed from her mother to appellant was found in one of the boxes. Appellant did not deny this testimony, although of course he had previously testified that the deed had, at all times since its execution, been in his possession, and kept in his desk.

It is admitted that appellant, as his mother's executor, inventoried as part of his mother's estate the property which he had conveyed to her and which the deed above referred to purported to reconvey to him. Appellant, also, in his petition for distribution of his mother's estate, included this property, and it must be presumed that, in the testimony introduced in support of this petition, it was stated that the petition correctly described his mother's property. Appellant calls attention to the fact that the titles to the rather complicated descriptions of real estate belonging to the estate of Margaret Lynch were worked out by the attorney for the estate, and that appellant offered to prove that he forgot to call his attorney's attention to the fact that his mother had conveyed to him an interest in the property, and that, because of his unfamiliarity with legal matters, he did not appreciate the significance of the fact that property which his mother had conveyed to him was included in the inventory, petition, and decree of distribution as part of her estate.

Respondent calls attention to the fact that appellant first stated that the deed had been executed in 1927, instead of 1929; that, during his mother's lifetime, appellant had, in dividing certain money received on account of the property, apportioned to his mother a share consistent with her ownership of the interest in the property which she owned, without allowing any deduction on account of the interest which appellant contends she conveyed to him; and that appellant, in apportioning certain other receipts after his mother's

death, had divided the money between himself and respondent upon the basis of ownership as shown in the decree of distribution. Appellant in his testimony also referred to his mother as having owned an undivided quarter interest in certain land, later changing his testimony by saying he intended an eighth, it appearing that, without taking the deed into consideration, appellant's mother would have owned a quarter interest and not an eighth.

The trial court filed a memorandum opinion, which is included in the statement of facts, in which the court stated that the proof failed to show a delivery of the deed to appellant during the lifetime of his mother; and that, on the contrary, the proof was that the deed was found by respondent among her mother's papers, as testified to by respondent. The court also called attention to the fact that appellant had included the property with the other property belonging to his mother, in the administration of the latter's estate, and had ignored the deed in determining his interest in the estate and the interest of the other heirs. The court also was of the opinion that appellant's attempt to establish the deed amounted to a collateral attack upon the decree of distribution, which had been entered at appellant's suggestion.

The conclusion of the trial court that the evidence failed to show that the deed had ever been delivered is supported by the evidence. The trial court reached this conclusion after listening to conflicting evidence given by the respective parties, and after considering appellant's conduct in several pertinent matters in which his acts were inconsistent with his claim of title under the deed. Appellant's testimony is unsatisfactory. Under these circumstances, the conclusion of the trial court is entitled to great weight, and

being amply supported by the evidence, will not be reversed.

This renders unnecessary consideration of the admissibility of appellant's testimony that his mother had handed the deed to him, and whether the objection to this testimony was waived by respondent's failure to renew her objection on that ground when appellant testified on direct examination, and also of respondent's contention that appellant's attempt to claim under the alleged conveyance constitutes a collateral attack on the decree of distribution, entered on appellant's petition. Upon these questions, we express no opinion.

We shall now consider appellant's contention that the trial court erred in directing that, in the partition of lot 4 above described, the referee shall so partition that tract (which contains about thirty-four acres) that the portion of the tract upon which respondent has constructed buildings and made improvements shall be partitioned to her without giving appellant any advantage, benefit, or credit, on account of such improvements, or by reason of the enhancement of the value of lot 4 by reason of the improvements.

Appellant contends that lot 4 should have been ordered partitioned between appellant and respondent so as to give each party an equal benefit of the value of the land, together with the improvements thereon.

It appears that lot 4 was owned by Jeremiah and Mary Lynch, grandparents of respondent and appellant. By the decree of distribution in the estate of Mary Lynch, lot 4 was distributed as follows: To respondent Marguerite Lynch, appellant Dan J. Lynch, and Kathleen Lynch, their sister, an undivided 1/36 each, and the remainder of the land to Dan Lynch, the uncle of the other three distributees. Later, by the decree of distribution entered in the estate of Kathleen Lynch, her 1/36 interest in lot 4 was distributed to her mother,

Margaret Lynch. Apparently, then, in 1928, lot 4 was owned by Dan Lynch (generally referred to as "Uncle Dan"), his sister-in-law, Margaret Lynch, and Marguerite Lynch, respondent herein, appellant having previously conveyed his interest in the tract to Margaret Lynch, his mother.

Upon this tract was located the dwelling in which Jeremiah and Mary Lynch had lived, and which after their deaths had been occupied by the different members of the family group, including Uncle Dan, Uncle Jeremiah, Mrs. Margaret Lynch, respondent during her girlhood, and appellant. The family dwelling was evidently uncomfortable and inadequate, and during the spring of 1932, respondent suggested to her uncle that, if he would convey to her a small portion of lot 4, she would improve that portion by constructing thereon a more comfortable home, for the benefit of, and to be occupied by, the family, including appellant and Uncle Dan. Respondent and her husband were then visiting her family in Mason county, and returned to their home in Ohio without having reached any definite agreement with Uncle Dan concerning this matter, at least without receiving any deed from him. Respondent, however, caused plans for a new house to be prepared, but little had been actually accomplished when appellant, under date June 30, 1932, wrote respondent and her husband the letter, reading in part as follows:

"Dear Frank & Marg:
    "Received your letters with bill of laden, also, note with regards to Dick. The house movers started in yesterday she up and ready to move. George received a letter from Rounds, he is waiting your approval of the plan. Att. Lynch was out here this morning. From what I can understand he is going to deed the bay front forty to us with those reservations that Lynch spoke about. . . Will close for this time. Love. Dan."

The letter contained some further reference to the construction of the proposed dwelling. Mr. Rounds was the architect who was preparing the plans; "Att. Lynch" was attorney John S. Lynch, of Olympia, who represented Dan Lynch, senior; and the "bay front forty" is lot 4.

The house was constructed, and July 11, 1932, Uncle Dan by deed conveyed to respondent and appellant lot 4, section 10, township 19, north range 3 west, W. M., containing about thirty-four acres, reserving "to himself during the remainder of his natural life, the right to use and occupy for his own use and control thereof the above described premises with appurtenances thereon." This deed was filed for record November 29, 1932.

It appears that, prior to the delivery of this deed, Uncle Dan had made his will, leaving his property to appellant, his namesake. After Uncle Dan's death in 1934, such a will was found and admitted to probate.

Appellant argues that, because the decree of distribution in the matter of the estate of Mary Lynch was entered in the year 1914, it should not be assumed that respondent's ownership of the undivided interest in lot 4, which she apparently received through that decree, has continued. The record is silent as to any loss of respondent's undivided interest in the land, she testified that she still owned it, and her title to such an interest, having been *prima facie* shown through the decree of distribution, will be presumed to have continued, in the absence of evidence to the contrary.

In 1932, then, respondent and her uncle Dan Lynch, and also, apparently, respondent's mother, Margaret Lynch, owned lot 4 as tenants in common, Dan Lynch owning 33/36, Margaret Lynch 2/36, and respondent 1/36. Margaret Lynch's interest arose through the decree of distribution in the estate of her daughter Kath-

leen Lynch, and from the deed from appellant to his mother, above referred to. Of course, if appellant's claim under the deed from his mother to him was valid, he had a 1/36 interest in the tract, and his mother 1/36. Appellant apparently sometimes claimed that he had no interest in the land prior to the death of his Uncle Dan, and at another time stated that he did have an interest prior to his uncle's death, but this matter is immaterial.

Appellant then argues that, regardless of whether or not respondent actually owned a small undivided interest in the tract, she claimed no such interest, because she testified that the property belonged to her Uncle Dan. Respondent's language was general in its nature, and did not have the effect of estopping her to now rely upon the true situation.

It appears that the matter of the construction of the house was the subject of considerable family discussion, and that the improvement of the property at respondent's expense was finally agreed to. Before all of this expense was incurred, respondent received from appellant the letter of June 30, 1932, *supra,* and it does not appear that respondent objected to the then proposed conveyance from Uncle Dan, but proceeded to carry out the plan for the improvement of the property. We cannot agree, however, as argued by appellant, that by so doing she has barred herself from now asserting her lawful rights.

It appears that lot 4, unimproved, would be worth approximately eleven hundred dollars; that the house which respondent constructed, and other improvements, cost over eight thousand dollars, and, at the time of trial, was worth something over six thousand dollars. Appellant argues, in effect, that respondent improved the property at a cost of eight thousand dollars, in consideration of the deed conveying to her an undivided

one-half interest in land which unimproved was worth eleven hundred dollars.

From the evidence it appears that respondent was not improving the property by building a house thereon as a business or investment proposition, for any valuable consideration. Her mother was aged and ill, and respondent was willing to construct what is evidently a comfortable and convenient dwelling, for the use of the family, who did use it so long as respondent's mother lived. The order of the trial court does not result, as argued by appellant, in granting to respondent a charge against appellant's interest in lot 4. The order simply grants respondent, a tenant in common, the benefit of the improvement which she placed upon the property.

In support of his argument, appellant cites the case of *Guignard v. Corley,* 147 S. C. 12, 144 S. E. 586, 62 A. L. R. 533, in which it appeared that one owning no interest in land, but as a mere trespasser, placed improvements thereon, thereafter purchasing the interest of a tenant in common. Upon a partition being ordered, it was held that the then tenant in common who had improved the property should be allowed no advantage by reason of the improvements. In considering the question, the court said:

"But this is quite different from the proposition that a trespasser may enter upon the common estate, make improvements, and then, when he scents the danger of losing his improvements, purchases the interest of a tenant in common and attempts to sail under his flag. The situation was crystallized when he entered without right and erected the improvements. At that instant the improvements passed to all of the tenants in common, and a conveyance by one tenant in common conveyed only his interest in the general estate augmented by the unwarranted improvements. His deed from Tucker could convey no greater right or interest than Tucker possessed, and certainly Tucker could not have

claimed the interest of all of the other tenants in common in the improvements which then had become the common property of all."

The case is not in point here, as respondent did not, as a mere trespasser, spend money for the improvement of the property. She had an interest therein, and improved the property pursuant to an agreement with her cotenants, and for their comfort and convenience.

In the case of *Maciejewska v. Jarzombek*, 243 Ill. 136, 90 N. E. 231, also cited by appellant, it appeared that Mrs. Jarzombek and her daughter owned a lot as tenants in common, and that Mr. Jarzombek improved the lot, which was thereafter conveyed to a third person, who in turn deeded it to Mr. and Mrs. Jarzombek. Mr. Jarzombek conveyed his interest to his son. It was held that the last grantee was entitled to no special advantage because of the improvement of the property by his father. The court evidently gave great weight to the presumption of a gift either from the mother to her daughter, or from the husband to his wife. The facts were complicated, and the court, while recognizing the general equitable rule in favor of a tenant in common who has improved the common property, properly found no occasion to apply that principle.

While we do not consider that the conveyance from Uncle Dan of his interest in lot 4 was made in direct financial consideration of the improvement of the property by the construction of a house thereon, if such was the case, it would seem that respondent should be protected under the rule laid down in 47 C. J. 462, § 481:

"Where one cotenant has paid more than his proportion of the purchase price of the land, he is entitled on partition to an accounting thereof."

The general rule governing partition between tenants in common is stated in 47 C. J. 471, § 505, where the general rule is stated as follows:

"A tenant in common who has placed improvements on the property may have such fact taken into consideration on partition by having allotted to him that part on which the improvements are situated."

Section 506 restates principles to the same effect.

In the case of *Leake v. Hayes,* 13 Wash. 213, 43 Pac. 48, 52 Am. St. 34, this court used the following language:

"While it is a well-settled general rule of law that one tenant in common cannot at his own suit recover for improvements placed upon the common estate without the request or consent of his co-tenant, yet a court of equity will not, 'if it can avoid so inequitable a result, enable a co-tenant to take advantage of the improvements for which he has contributed nothing. When the common lands come to be divided, an opportunity is offered to give the co-tenant who has enhanced the value of a parcel of the premises the fruits of his expenditures and industry, by allotting to him the parcel so enhanced in value, or so much thereof as represents his share of the whole tract. "It is the duty of equity to cause these improvements to be assigned to their respective owners (whose labor and money have been thus inseparably fixed on the land), so far as can be done consistently with an equitable partition." ' Freeman, Cotenancy and Partition (2d ed.), § 509."

In the case of *Hamlin v. Hamlin,* 90 Wash. 467, 156 Pac. 393, this court reviewed an order of the superior court confirming a report of the referees who had been appointed in an action for partition. In the course of the opinion, this court quoted with approval from 30 Cyc. 257, as follows:

" 'Various equities may exist in favor of a cotenant which are not so absolute in character that they can be enforced against the other cotenants to the prejudice of their rights, but which the commissioners are at liberty to consider and protect. Indeed, we may now regard them as under the duty of so doing unless their action in favor of one cotenant must operate inequitably to another. Among these are allotting parts to co-

tenants in possession thereof or who have erected improvements thereon.' "

The court stated that the text "is elementary law and needs no citation of authority at this time to support it."

In the case of *Blackwell v. McLean,* 9 Wash. 301, 37 Pac. 317, this court, in an action for partition, held that necessary improvements placed upon property by a cotenant, if the improvements enhance the value of the land, may equitably be considered in an action for partition and accounting.

■ At the time it was agreed by the members of the family that respondent would build a substantial dwelling on lot 4, appellant and respondent were not tenants in common as to that land, but, as shown by appellant's letter to respondent, and much other evidence in the record, appellant thoroughly understood the situation, and indeed, had much to do with the improvement of the property and the disbursement of respondent's money in connection therewith. Of course, after the delivery of the deed from Uncle Dan, respondent and appellant, with their mother, were tenants in common, their interests under the deed being subject to the life estate reserved in favor of the grantor. Appellant accepted this deed with full knowledge of all that respondent had done toward the improvement of the land.

The trial court did not err in directing that, in partitioning lot 4, respondent receive the benefit of the improvements which she had placed upon the property.

The order appealed from is affirmed.

ROBINSON, C. J., MILLARD, JEFFERS, and SIMPSON, JJ., concur.