[No. 46486. En Banc. August 7, 1980.]

PATTY J. CUMMINGS, *Respondent,* v. WALLY
H. ANDERSON, *Petitioner.*

*Victor V. Hoff,* for petitioner.

*Gary M. Abolofia,* for respondent.

ROSELLINI, J.—In September 1973, the petitioner and the respondent, contemplating marriage, bought the purchaser's interest in a contract for the sale of a single-family residence in Enumclaw and assumed the obligations of the underlying contract. They paid $2,500 for the assignment of the purchaser's interest. The contract called for monthly payments of $150, including interest, and the payment of the balance in full on or before August 1, 1975. It provided for forfeiture upon default.

The assignment was made to the petitioner and the respondent as tenants in common, and, according to the testimony of the attorney who advised them in this transaction, they intended to acquire the property as equal owners.

The evidence showed that both parties contributed to the downpayment, neither of them having assets sufficient to pay for the interest which they bought from the purchaser. They used their separate funds[1] for a part of it and obtained a loan for the balance. From the circumstances, it

---

[1] The respondent's only source of income, at that time, insofar as the record discloses, was child support payments.

is evident that they planned to pay the balance owed on the real estate contract, as well as the balance of the loan, with community funds which would belong to both of them. From these facts, it can be inferred that they intended to contribute equally in the purchase of the property.

The respondent in her answer to the petition tacitly acknowledges that the obligations of the parties were equal.

In February 1974, the parties were married. They lived in the residence, with the petitioner's two teenaged children and the respondent's four younger children, until August 1974, when the respondent left the home, taking her children and substantially all of the community personalty, including the cash in the joint bank account. She was granted a default dissolution in March 1975, the decree making no disposition of the property of the parties.

At the time of the respondent's departure from the residence, the parties had paid $2,828.92 toward the purchase of the property and $16,350.16 remained to be paid. They had no discussion regarding their rights in the property or their future obligations. The respondent did not communicate with the petitioner and made no offer to participate in making the payments necessary for acquisition of the property, nor did she assert a right to occupy the property or to receive rent for the petitioner's occupancy of it. He remained in possession and continued to make the payments under the contract, paying also the taxes and insurance premiums. At the time this action was brought, he had reduced the unpaid balance to $8,763.85. He had arranged with the sellers to assume their mortgage obligations instead of paying the full balance of the purchase price in August 1975.

Shortly before the final payment became due under the original contract, the respondent, who had remarried after the dissolution, offered to purchase the petitioner's interest in the contract for the sum of $1,000. This offer was rejected. She then brought this suit for partition, claiming a one–half interest in the purchaser's equity, and demanding one–half of the rental value of the premises during the

period that the residence had been occupied by the petitioner alone.

At the trial, the respondent testified that she had left the premises to protect her children from involvement in and observation of the sexual activities of the petitioner's son, then in his early teens. She said that she had told the petitioner that one of them would have to leave, and he had said it would have to be her. His testimony was that she had left the home without notice and without explanation. She did not contend that her departure had been occasioned by any conduct or omission of the petitioner.

The trial court found that the respondent had not been ousted by the petitioner. Because the evidence was uncertain with respect to the contributions made by the parties prior to the respondent's departure, the court found that their contributions had been equal. It further found that the respondent had made her own division of the property when she took with her the bulk of the community personalty, which the court found to have a value in excess of $1,400, and that she had abandoned her interest in the real property, as well as her obligations under the contract of purchase. Its judgment quieted title to the purchasers' interest in the petitioner, and ordered that he obtain a release of the respondent from any liability under the real estate contract.

The Court of Appeals, Division One, affirmed the lower court's finding that there had been no ouster of the respondent, as well as its conclusion that the petitioner was not obliged to pay rent for his exclusive occupancy of the premises. It held, however, that the interests of the parties in the property were fixed as of the date of their purchase of the vendee's interest and their assumption of the contract obligations. Accordingly, it awarded the respondent a one–half interest in the purchasers' equity, allowing the petitioner a lien on that interest for one–half of the amount which he had paid out in maintaining the contract, one–half of the value of improvements which he had made, and

one-half of the value of the community personal property taken by the respondent.

It is agreed that the parties' interest in this property was held as tenants in common. The petitioner urges that the court was in error in holding that the respondent had acquired a one-half interest in the purchasers' equity, which was not affected by her subsequent abandonment of her obligations under the contract. He argues that, because the survival of the purchasers' interest depended upon the fulfillment of the obligations under the contract, the respondent's abandonment of those obligations manifested an intent to also abandon any interest which she had acquired as of that date. Alternatively he argues that, even if it cannot be said that she abandoned her existing interest as of that date, that interest was proportionate to her investment in the property, and she acquired no further interest thereafter.

The respondent, on the other hand, maintains that because the status of the property was established as of the date of acquisition, the respective interests of the parties were fixed as of that date. The evidence was undisputed, and the trial court found that the parties intended to acquire the property as equal owners. It is the theory of the respondent that nothing which happened thereafter could alter her interest.

While there is no contention that the property is or was ever community property, the respondent relies upon the rule that the status of property as community or separate is determined as of the date of acquisition, citing *E.I. DuPont de Nemours & Co. v. Garrison,* 13 Wn.2d 170, 124 P.2d 939 (1942). According to this rule, the character of such property depends on whether it was acquired by community funds and community credit or separate funds and separate credit. *In re Estate of Binge,* 5 Wn.2d 446, 105 P.2d 689 (1940). It is immaterial whether the deed is made to one or both parties. *Walker v. Fowler,* 155 Wash. 631, 285 P. 649 (1930). The character thus established remains fixed, unless changed by deed, due process of law, or the working of

some form of estoppel. *Conley v. Moe,* 7 Wn.2d 355, 110 P.2d 172, 133 A.L.R. 1089 (1941). As was said in *Hamlin v. Merlino,* 44 Wn.2d 851, 272 P.2d 125 (1954), quoting from *In re Estate of Dewey,* 13 Wn.2d 220, 124 P.2d 805 (1942), which in turn quoted *Guye v. Guye,* 63 Wash. 340, 115 P. 731 (1911), once it is made to appear that property was once of a separate character, it will be presumed to maintain that character until some direct and positive evidence to the contrary shows otherwise.[2]

These cases are concerned with the character of property owned by married persons. They do not involve the method of determining the respective shares of unmarried copurchasers under a real estate contract, which is the problem before us here. Assuming, however, that the same general principles are applicable to such a determination, they do not preclude a showing that the allocation of interests contemplated at the inception of a property acquisition was changed by subsequent events.

▆ Where, as here, the character of ownership is that of cotenancy, and the instrument by which the property was acquired is silent as to the respective interests of the co-owners, it is presumed that they share equally. However, when in rebuttal it is shown that they contributed unequally to the purchase price, a presumption arises that they intended to share the property proportionately to the purchase price. *Iredell v. Iredell,* 49 Wn.2d 627, 305 P.2d 805 (1957). Annot., *Presumption and Proof as to Shares of Respective Grantees or Transferees in Conveyance or Transfer to Two or More Persons as Tenants in Common, Silent in That Regard,* 156 A.L.R. 515 (1945). The Illinois Supreme Court in *People v. Varel,* 351 Ill. 96, 100, 184 N.E. 209 (1932), said:

---

[2]In a dissolution action, however, division of the property is not controlled by its character as community or separate; rather the object is to make a division which is fair, just and equitable. *Baker v. Baker,* 80 Wn.2d 736, 498 P.2d 315 (1972).

Where title to property is taken in the name of two persons as co–tenants and their contributions to the purchase price of the property are unequal and their relationship is not such that a gift from one to the other is presumed to be intended, they will in equity be held to own the property in the proportions of their contributions to the purchase price.

The presumption that cotenants intend their interests to be proportionate to their contributions to the purchase price was applied in *Iredell,* even though the relationship of the parties was that of husband and wife.

In *West v. Knowles,* 50 Wn.2d 311, 311 P.2d 689 (1957), we said that where property is held by the parties as tenants in common, the courts will presume that they intended to share the property in proportion to the amount contributed, where it can be traced, otherwise they share it equally. *Accord, Shull v. Shepherd,* 63 Wn.2d 503, 387 P.2d 767 (1963).

While the principle was not expressly enunciated therein, it was applied in *Manello v. Bornstine,* 44 Wn.2d 769, 270 P.2d 1059, 45 A.L.R.2d 494 (1954). That was an action for dissolution and accounting involving a partnership in which the four partners had contracted to share equally. It was contended that one of the partners had abandoned the partnership and had no further interest in the business or its assets. Upon the evidence, this court found that there had been no abandonment. Nevertheless, we approved the trial court's finding that the partner's interest should be calculated as of the day he had ceased to function as a member of the partnership.

The equitable principle involved in these cases is in harmony with the rule that while a cotenant cannot at his own suit recover for improvements placed upon the common estate without the request or consent of his cotenant, yet a court of equity, in a partition suit, will give the cotenant the fruits of his industry and expenditures, by allotting to him the parcel so enhanced in value or so much thereof as represents his share of the whole tract. That rule is stated

and followed in *Bishop v. Lynch,* 8 Wn.2d 278, 111 P.2d 996 (1941), citing A. Freeman, *Cotenancy and Partition* § 509 (2d ed. 1886).

Both of these rules reflect an understanding that a cotenant should not be permitted to take inequitable advantage of another's investment.

The respondent insists that the petitioner's payments in excess of his obligation gave him a lien right but did not in any way increase his ownership interest. In support of this contention she cites *Katterhagen v. Meister,* 75 Wash. 112, 134 P. 673 (1913); *In re Estate of Parker,* 153 Wash. 392, 279 P. 599 (1929); *Walker v. Fowler,* 155 Wash. 631, 285 P. 649 (1930); *Finley v. Finley,* 47 Wn.2d 307, 287 P.2d 475 (1955); *Cook v. Vennigerholz,* 44 Wn.2d 612, 269 P.2d 824 (1954); and *In re Marriage of Harshman,* 18 Wn. App. 116, 567 P.2d 667 (1977). All of these cases, save that of *Cook,* are community property cases, and they support the general rule that the character of property as community or separate is determined at the time of acquisition, and depends upon whether the acquisition was made with community or separate funds or credit. In the case of *Harshman,* the Court of Appeals, Division One, extended the rule which we have applied in cases where property is acquired with the aid of a mortgage to one in which it was acquired by means of a real estate contract, following the suggestion of Professor Harry Cross in *The Community Property Law in Washington,* 49 Wash. L. Rev. 729, 762 (1974).

The case of *Cook* was a suit for a partnership accounting. The partnership had existed for many years, and at its inception property was acquired, which was paid for in large part by the plaintiff who took a promissory note from his partner for his proportionate share of that payment. When the accounting was sought, action on the note was barred by the statute of limitations. We held, however, in accord with the plaintiff's contention, that when he paid his partner's share of the purchase price he acquired a lien on that partner's interest for reimbursement, which was not

extinguished by the passage of time. There was no contention there that the plaintiff's partner had abandoned his obligations or that the plaintiff was equitably entitled to any relief other than reimbursement.

None of the cited cases presented facts similar to those involved here.

 A partition proceeding is an equitable one in which the court has great flexibility in fashioning relief for the parties. *Leinweber v. Leinweber,* 63 Wn.2d 54, 385 P.2d 556 (1963). Here, the trial court correctly held that the respondent, having abandoned her obligations under the contract, could no longer be heard to say that her interest was equal to that of the petitioner, who alone made the payments necessary to preserve the equity existing at that time and avoid forfeiture. There appears no reason why the petitioner should have intended to donate to the respondent the benefit of one–half of the payments which he made after their relationship terminated, nor is it contended that he had any legal or equitable duty to do so.

We are mindful that tenants in common have certain fiduciary duties toward each other. *See* 4A R. Powell, *Real Property* ¶ 605 (1979).[3] There is no showing that such a duty was breached here.

The intent of the parties at the inception of this undertaking cannot be permitted to govern their rights at this juncture, since their original purpose has been frustrated by the change in their relationship to each other and to the property, a change for which the petitioner was not responsible. When that change occurred, the respondent found it no longer practical or expedient to further pursue the acquisition of the property. Her actions manifested to the petitioner that she was abandoning her obligations, and

---

[3] "Two situations give rise to most of the problems involving the existence and extent of fiduciary relations between tenants in common. These are (1) the effort by one cotenant to buy in and later to assert a superior title to the detriment of his cotenants; and (2) the making of an agreement with the other cotenants, in which some advantage is gained by 'overreaching' the others." R. Powell, *supra* at 619.

warranted the conclusion that any further payments made by him would inure to his sole benefit, except to the extent that they preserved the respondent's existing equity in the property.

However, we cannot agree with the trial court's conclusion that the respondent, by abandoning her obligations, lost the interest which she had already acquired in the property. As the cases which we have cited indicate, a very strong showing of intentional abandonment is necessary before a cotenant will be held to have lost such an interest. Here, it is true that the respondent took most of the community personal property when she left the home of the parties, but that property did not represent one–half of the value of the property of the parties. Her interest in the real estate contract at that time was approximately 7.38 percent of the purchase price. Adding the value of the personal property, $1,400, to the amount of the purchase price which had been paid, which was $2,828.92, and taking no account of the probable increase in value of the investment due to inflation, the property of the parties was worth $4,228.92. The share of each would have been $2,114.46. When it is also considered that the personal property taken by the respondent was due to depreciate in value, while the real property was destined to increase in value, the inequity of denying her the benefit of her investment in that property is apparent.

We conclude that the respondent has an equity in the real property which bears the same ratio to the total equity as the ratio of her investment to the total investment of the parties. The petitioner is entitled to have offset against that interest a corresponding portion of the taxes and insurance premiums which he has paid. While he did some remodeling in the interior of the house, he did not prove that these changes resulted in an increase in its market value. The rule is that improvements placed upon the property by one cotenant cannot be charged against the other cotenant unless they were either necessary or actually enhanced the value of the property. *In re Estate of Foster,* 139 Wash.

224, 246 P. 290 (1926). Accordingly, the petitioner is not entitled to an offset for these improvements.

The respondent urges reversal of the Court of Appeals upon the question of her entitlement to rent. She relies upon the conduct of the petitioner's son as constituting ouster, but cites no authority which supports that contention.

It is the rule in Washington that, in the absence of an agreement to pay rent, or limiting or assigning rights of occupancy, a cotenant in possession who has not ousted or actively excluded the cotenant is not liable for rent based upon his occupancy of the premises. *Fulton v. Fulton,* 57 Wn.2d 331, 357 P.2d 169 (1960). In order for ouster to exist, there must be an assertion of a right to exclusive possession. *See* cases cited in Annot., *Accountability of Cotenants for Rents and Profits or Use and Occupation,* 51 A.L.R.2d 388, 438 (1957); Black's Law Dictionary 1253 (4th rev. ed. 1968).

An appealing argument is made that, in a situation such as this, where the property is not adaptable to double occupancy, the mere occupation of the property by one cotenant may operate to exclude the other. *See* Annot., 51 A.L.R.2d at 443.

Had the respondent not abandoned her obligations under the contract of purchase at a time when over four–fifths of the purchase price remained to be paid, we would be much inclined to agree that she is entitled to receive rent. Under the circumstances as they exist, she has not demonstrated a sufficient equitable interest to warrant this extension of the rule.

Upon payment to the respondent of an amount sufficient to compensate her for her interest, less the offsets we have approved, the petitioner may have title to the purchasers' interest quieted in him.

The decision of the Court of Appeals, Division One, is reversed (*Cummings v. Anderson,* 22 Wn. App. 634, 590 P.2d 1297 (1979)), except as affirmed or modified herein,

and the cause is remanded to the Superior Court for King County with directions to proceed accordingly.

UTTER, C.J., and STAFFORD, WRIGHT, BRACHTENBACH, HOROWITZ, DOLLIVER, HICKS, and WILLIAMS, JJ., concur.

Reconsideration denied September 26, 1980.