IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Estate of | ) | |
| | ) | No. 35879-8-III |
| HELEN LOUISE GIORGI GRIMSLEY OWEN, | ) | |
| | ) | |
| Deceased. | ) | UNPUBLISHED OPINION |
| | ) | |

KORSMO, J. — An unsuccessful TEDRA[1] challenge resulted in a verdict against appellant Paul Grimsley. We primarily affirm, but do grant some relief and reverse and remand for further proceedings.

## FACTS

This action revolves around the wills of the appellant's mother and grandmother. The grandmother, Laura Giorgi, died in 1972. Her will created the Giorgi Trust. The trust's beneficiary was Laura Giorgi's daughter, Helen Owen, the mother of appellant and his three siblings. The Giorgi Trust created a life estate for Helen and passed the trust's assets to Helen's children upon their mother's death.

Helen, in turn, executed a will on February 26, 2015. The will named Karen Grimsley as personal representative and empowered her "to administer my estate independently or under court supervision." Clerk's Papers (CP) at 7. On the same day,

---

[1] Trust and Estate Dispute Resolution Act, chapter 11.96A RCW.

Helen Owen created the Owen Grimsley Homestead Trust (OGH) and named Lorna

Johnson as trustee.  Ms. Johnson also typed the will that was executed that day.  Ms.

Owen transferred three parcels of land in Curlew to the OGH Trust.  Johnson distributed

one share of the trust to Ms. Owen, and one share to each of the four children.  Each

share represented 20 percent of the trust.

Helen Owen died in Ferry County on March 13, 2015.  She was survived by her

four children: Karen, Paul, Michael, and Diane Grimsley.  At the time of her death, Helen

owned a 64.4 percent interest in six parcels of land located in Ferry County; the

remaining 35.6 percent interest had belonged to the Giorgi Trust and passed to the four

children upon their mother's death.  Paul Grimsley had lived on one of the Ferry County

land parcels, the Lundimo Property, for many years and continued to do so after his

mother's death.[2]

The Helen Owen will was admitted to probate in the Spokane County Superior

Court on June 11, 2015.  The court issued letters testamentary to Karen as the personal

representative.  Paul moved on September 15, 2015, to change the venue of the probate

proceedings to Ferry County.  The court denied the motion.

Paul filed a TEDRA petition that was consolidated with the probate action at his

request.  The petition made several requests of the court, including reconsideration of his

---

[2] For convenience, we will refer to the Grimsley children by their first names.

2

change of venue request, and also sought removal of Johnson as trustee and of Karen as the personal representative.

The four children reached a mediated settlement by which they would attempt to sell all of the property except the Lundimo parcel. After that, Johnson, the estate, and Paul moved for summary judgment. The court denied the motions of Johnson and Paul, but partially granted summary judgment to the estate by directing that Paul pay rent to the estate in the sum of $300 per month for the period from March 2015 to August 2017. The remaining matters were left for trial.

The court ruled that Johnson, a non-lawyer, could not represent the OGH Trust, but allowed her to represent her own interests pro se. Attorney Jeremy Zener, a member of the same firm as the estate's counsel, agreed to represent OGH. The matter eventually proceeded to bench trial.

Helen's ledgers were admitted into evidence at trial over Paul's objection. The ledgers detailed loans made to Paul by Helen. The court found in favor of the estate and OGH on all claims. Judgment for the estate in the sum of $173,269.06 was entered against Paul. The judgment included the debts memorialized in the ledgers, the rent for the Lundimo Property, and attorney fees and costs.

Paul appealed to this court. A panel ultimately considered his appeal without hearing argument.

No. 35879-8-III
*In re Estate of Owen*

ANALYSIS

This appeal raises numerous claims, including requests by all sides for attorney fees.[3] In order, we address the venue question, the denial of Paul's summary judgment motions, the partial grant of summary judgment to the estate on the questions of statute of limitations and rent, representation of both the estate and the trust by the same law firm, the creation of the OGH Trust, the admission at trial of Helen's ledgers, and the competing requests for attorney fees.

*Venue*

Paul argues that the trial court erred in denying his two requests for change of venue. Although he may well be correct in his contention that venue should have been transferred to Ferry County, he waived that argument by failing to seek interlocutory review.

The petitioner in a probate proceeding may select any county in the state as venue. RCW 11.96A.050(4). However, if a party moves for change of venue within four months of the notice of appointment, and the decedent was a Washington resident at the time of death, the court must move venue to the county of the decedent's residence unless good

---

[3] Johnson filed a brief of respondent arguing in favor of the validity of the OGH Trust. Since the trust's interests are represented by counsel, we do not address any of Johnson's arguments.

4

cause is shown. RCW 11.96A.050(4)(a). Neither the legislature nor the courts have defined "good cause" under this statute.

The court likely should have granted Paul's motion to change venue. Ferry County was Helen's residence at the time of her death. Good cause did not exist to keep the proceedings in Spokane County. The estate argued that good cause existed because the will granted discretion to the personal representative to choose venue. However, the will merely grants the personal representative the discretion to administer the estate with or without court supervision. Even if the will could grant discretion to choose venue, it did not purport to do so. The trial court found that good cause existed because the personal representative had selected Spokane County and letters testamentary had been issued there. However, neither of these grounds constitute good cause. The statute provides that even if the personal representative selects a county and letters testamentary issue there, the court must grant certain timely transfer motions, absent good cause. While the term good cause lacks a precise definition, it would be rendered meaningless if it was satisfied by the representative's initial selection and issuance of letters testamentary.

Good cause to deny the transfer motion was not shown. Nonetheless, that error does not aid Paul. When a change of venue motion is wrongly denied, the error is waived unless the party seeks interlocutory review of the ruling. *Lincoln v. Transamerica Inv. Corp.*, 89 Wn.2d 571, 578, 573 P.2d 1316 (1978); *In re Marriage of Hennemann*, 69 Wn.

App. 345, 348 n.3, 848 P.2d 760 (1993); *Hauge v. Corvin*, 23 Wn. App. 913, 915-916, 599 P.2d 23 (1979). If interlocutory review is not permitted, the wronged party can preserve the issue by establishing on appeal that it was prejudiced by the venue ruling. *Lincoln*, 89 Wn.2d at 578. Only once, in a case involving pretrial publicity, has prejudice been established. *Id.*

Here, Paul did not seek interlocutory review pursuant to RAP 2.3(a). He has waived his venue challenge.

### Denial of Paul's Summary Judgment

Paul next contends that the trial court wrongly denied his summary judgment motion. Several of those claims are moot in light of the trial.

Well settled standards govern review of summary judgment rulings. Typically, this court reviews a summary judgment de novo, performing the same inquiry as the trial court. *Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000). The facts, and all reasonable inferences to be drawn from them, are viewed in the light most favorable to the nonmoving party. *Id.* If there is no genuine issue of material fact, summary judgment will be granted if the moving party is entitled to judgment as a matter of law. *Id.* "A defendant in a civil action is entitled to summary judgment if he can show that there is an absence or insufficiency of evidence supporting an element that is essential to the plaintiff's claim." *Tacoma Auto Mall, Inc. v. Nissan N. Am., Inc.*, 169 Wn. App. 111, 118, 279 P.3d 487 (2012).

However, when summary judgment is denied due to the existence of material facts in dispute, appellate review is appropriately focused on the sufficiency of the evidence presented at trial rather than the trial court's summary judgment ruling. *Adcox v. Children's Orthopedic Hosp. & Med. Ctr.*, 123 Wn.2d 15, 35 n.9, 864 P.2d 921 (1993).[4] The reason for this approach is that it allows appellate courts the opportunity to review evidentiary sufficiency on the basis of the most complete factual record. *State v. Jackson*, 82 Wn. App. 594, 607-609, 918 P.2d 945 (1996). An exception to this general approach exists for the situation where denial of summary judgment turned on a substantive legal issue rather than a factual dispute. *Kaplan v. Nw. Mut. Life Ins. Co.*, 115 Wn. App. 791, 799, 65 P.3d 16 (2003). In that instance, the appellate court may review the ruling despite subsequent entry of a final judgment if the issue is solely one of substantive law. *Columbia Park Golf Course, Inc. v. City of Kennewick*, 160 Wn. App. 66, 79, 248 P.3d 1067 (2011). Review of legal rulings is de novo. *Kaplan*, 115 Wn. App. at 800.

Paul renews his summary judgment arguments here, arguing that he was entitled to judgment as a matter of law. One significant problem is that the trial court concluded that his motion for summary judgment presented factual questions for resolution at trial,

---

[4] This approach also follows from the interlocutory nature of a pretrial ruling. A judge can "reverse or modify a pretrial ruling at any time prior to the entry of final judgment." *Adcox*, 123 Wn.2d at 37.

and the court then largely found against Paul on the facts. Those factual determinations are not seriously[5] challenged in this appeal, leaving him only a narrow opportunity to proceed.

For instance, Paul argued that Ms. Johnson practiced law without a license in the course of helping with will preparation. However, what exactly Ms. Johnson did in relation to the will was a seriously disputed question of fact that the trial court resolved by determining that she only typed up Helen's will and did not draft it. Thus, only if typing up a will constitutes practice of law could Paul prevail on this argument. Typing does not constitute practice of law; he does not prevail.[6]

The remaining arguments fare little better. He challenges the court's refusal to remove Karen as personal representative, arguing as a matter of law that several of her actions constituted breach of duty or waste, but fails to back the claim with any reasoned argument. Nevertheless, the court's trial findings expressly found that Karen did not commit waste nor act in bad faith. CP at 942.

---

[5] Although error is assigned to all of the findings relating to Ms. Johnson, there is no significant argument presented nor suggestion that the findings are unsupported by the evidence.

[6] The trial court agreed with his claim that Ms. Johnson was not entitled to represent OGH in court. Since Paul prevailed on this point, he has nothing to complain about on that score in this court.

Likewise, his claim that OGH should be dissolved presented factual questions about what was or was not happening concerning the trust. Those were certainly factual questions that prevented summary judgment.

The trial court properly denied Paul's motion for summary judgment.

*Summary Judgment for Personal Representative*

Paul argues that the court erred in granting summary judgment for Karen (1) denying his statute of limitations claim and (2) directing him to pay rent. We agree with the trial court that the statute of limitations did not bar the estate claim, but we agree with Paul that there was no basis for the rent award.

We have previously noted the standards governing our review. Paul contends, first, that the statute of limitations barred his mother from acting against his debt to her and that the estate likewise was barred. His claim fails.

Any action on written contracts and accounts receivable must be brought within six years. RCW 4.16.040(1), (2). However, the running of a statute of limitations does not extinguish a debt. *Lombardo v. Mottola*, 18 Wn. App. 227, 229, 566 P.2d 1273 (1977). The personal representative of an estate may retain from a beneficiary the amount that the beneficiary owes the estate, even if an action to recover the debt is barred by the statute of limitations. *In re Bowers' Estate*, 196 Wash. 79, 80, 81 P.2d 813 (1938); *In re Smith's Estate*, 179 Wash. 417, 418, 38 P.2d 244 (1934).

That is the situation here. Even if the estate could not collect on the debt, it was free to offset the brothers' share of the estate by the amount of the debt established at trial. The court correctly rejected the contention that the statute of limitations barred the estate from offsetting the debt owed by the beneficiaries.[7]

It is a different story for the rent. The trial court imposed a monthly rent on Paul beginning in March 2015 and continuing through August 2017. He argues that he was a cotenant and could not be charged rent. We agree.

With limited exceptions, an interest in property created in favor of two or more persons is a tenancy in common. RCW 64.28.020(1). Absent ouster, a cotenant in possession is not liable to other cotenants for rent unless there is an agreement otherwise. *Cummings v. Anderson*, 94 Wn.2d 135, 145, 614 P.2d 1283 (1980). "In order for ouster to exist, there must be an assertion of a right to exclusive possession." *Id*.

None of the siblings, nor the estate, had the right to exclusive possession of the property. When Helen died, her mother's 35 percent interest in the property passed immediately to the four children as a result of the Girorgi Trust. Helen's interest in the property, the remaining 65 percent went to the estate. Although the four beneficiaries of the estate were the same beneficiaries of the Giorgi Trust, the four received their interests

---

[7] From the estate's proof at trial, it appears that all of the loans from Helen to her sons were uncollectable due to the statute of limitations. The form of the order of judgment should differentiate between the offset indebtedness amount and the actual judgment amount that can be collected.

in the property through two separate bequests. Paul and his siblings were already cotenants with the estate at the moment Helen's estate came into being. Since the estate never had exclusive control over the property, it had no basis for charging Paul, a co-tenant with the estate, rent for the property.

The judgment for rent is reversed.

*Representation of Estate and OGH*

Paul next contends that the trial court erred in allowing attorneys from the same firm to represent both the estate and the OGH Trust. He did not establish that a conflict of interest existed.[8]

Paul sued both the estate and OGH, but neither of those defendants asserted any claims against the other. When OGH needed an attorney to represent it, a member of the firm representing the estate took over defense for the trust.

The relevant rules are clear: "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest." RPC 1.7(a).

> A concurrent conflict of interest exists if . . . the representation of one client will be directly adverse to another client; or . . . there is a significant risk that the representation of one or more clients will be materially limited by

---

[8] OGH also challenges Paul's standing to raise this issue. In light of our conclusion on the merits of the conflict claim, we need not discuss the standing question.

the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

*Id*. Generally, "while lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9." RPC 1.10(a).

This record does not indicate that a conflict of interest existed—both the estate and OGH were defending against Paul's challenges. Although the estate and OGH easily could fall into conflict, that would involve future litigation. This litigation did not present the problem.

The trial court did not err by refusing to disqualify the trust's counsel.

*Claim Against OGH*

Paul also argues that the trial court failed to make "cognizable findings" concerning his challenge to the creation of the OGH Trust. The trial court did not err in concluding that he failed to establish any damages.

OGH was established as a "Massachusetts trust," an archaic device originally designed to avoid restrictions on corporate land ownership. *See* BLACK'S LAW DICTIONARY 1825 (11th ed. 2019). At trial, Paul challenged the creation of the trust and claimed that Ms. Johnson failed to comply with reporting requirements.

On appeal, he has not provided sufficient argument to understand his claims and we share the frustration of respondent OGH in even attempting to divine his claim.[9] Like the trial court, however, we need go no further than to reiterate its conclusion that Paul never established how he was damaged by the creation of the trust or its operation. This court does not find facts. Paul's failure to establish any damages at trial leaves us with nothing to consider.

*Helen's Ledgers*

The primary issue arising from the trial involves the admission of Helen's ledgers, showing the amounts she loaned to her sons, over their objection that the dead man's statute excluded the evidence. The trial court properly admitted the ledgers.

Washington's dead man's statute is found in RCW 5.60.030. It provides that in an action against an estate, an interested party may not offer testimony adverse to the estate regarding transactions made with the decedent. *Id.* The purpose of the statute is to prevent parties from offering self-serving testimony that the decedent cannot refute. *Kellar v. Estate of Kellar*, 172 Wn. App. 562, 574, 291 P.3d 906 (2012). The statute does not apply to documents. *Id.* at 575. The statute also does not preclude testimony in favor of an estate. *Malacky v. Scheppler*, 69 Wn.2d 422, 425, 419 P.2d 147 (1966).

---

[9] Paul is correct in his view that there did seem to be no apparent purpose to creating the trust from either an estate planning or property transfer standpoint, but the utility of this device is not a question in this appeal.

Here, the ledgers were introduced by the estate against Paul. The dead man's statute did not exclude that evidence. There was no error.

*Attorney Fees at Trial*

The estate received its attorney fees and costs in the trial court, an award that Paul now challenges as unjust. While the trial court did not abuse its discretion in awarding fees to the estate, we remand for reconsideration of the amount of the fee award in light of our reversal of the partial summary judgment concerning the rent.

By statute, the trial judge is authorized to assign costs of estate administration, including litigation expenses. RCW 11.96A.150(1)(c) provides in part that

> the court may order the costs, including reasonable attorneys' fees, to be paid in such amount and in such manner as the court determines to be equitable. In exercising its discretion under this section, the court may consider any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved.

The statute squarely recognizes that trial judges have discretion in their authority to act equitably. Accordingly, the appellate courts consistently have reviewed attorney fee awards under TEDRA for abuse of discretion. *E.g.*, *In re Guardianship of Lamb*, 173 Wn.2d 173, 198, 265 P.3d 876 (2011) ("The express language of RCW 11.96A.150 leaves attorney fee awards in cases resolving guardianship disputes to the court's discretion. The statute allows a court considering a fee award to consider any relevant factor."); *In re Estate of Black*, 153 Wn.2d 152, 173, 102 P.3d 796 (2004). Discretion is

14

abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

The trial court did not abuse its discretion. Paul initiated the TEDRA action, thereby putting the estate to the expense of defending the action. The estate substantially prevailed. The trial court had tenable grounds for awarding the fees.

However, in light of our reversal of the rent action, it is appropriate for the trial court to reconsider whether the estate should receive fees for its efforts on that motion. Accordingly, we remand the attorney fee award for the court's consideration of that limited aspect of the award.

*Attorney Fees on Appeal*

Finally, both the estate and OGH seek attorney fees on appeal under TEDRA and for responding to a frivolous appeal. Given that Paul prevails in part, we do not find this appeal frivolous. Using TEDRA, we grant the estate fees for much of its work and OGH fees for some of its work.

Under TEDRA, this court has great discretion in awarding fees and may "consider any relevant factor, including whether a case presents novel or unique issues." *Guardianship of Lamb*, 173 Wn.2d at 198. The broad discretion even allows fees to both sides, or the court may assess fees to neither party or against the estate so that all contesting parties bear the costs of the dispute. *In re Estate of Evans*, 181 Wn. App. 436, 452, 326 P.3d 755 (2014).

Here, we allow the estate its reasonable attorney fees for responding to Paul's appeal, except for time spent defending the rent issue. We allow OGH its fees on appeal except for time spent on two issues that were primarily the concern of the estate—the venue and dead man's statute claims. Our commissioner will consider timely fee requests that are consistent with this paragraph. RAP 18.1(d), (f).

Reversed in part and remanded for proceedings consistent with this opinion.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Pennell, A.C.J.

_____
Siddoway, J.

16