

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Estate of | ) | No. 36220-5-III |
| | ) | |
| CLARA V. LARSON. | ) | UNPUBLISHED OPINION |
| | ) | |

SIDDOWAY, J. — Following a one-day bench trial of a TEDRA[1] action that had been consolidated with a related probate, the trial court entered a final judgment partitioning properties held in a testamentary trust and directing Norman Larson, the personal representative in the probate matter, to disburse assets and wrap up the estate.

Norman[2] appeals, arguing: (1) the trial court improperly denied his motion for summary judgment, (2) the trial court did not have jurisdiction to construe Clara Larson's

---

[1] Trust and Estate Dispute Resolution Act, chapter 11.96A RCW.

[2] Given the common last name of several of the actors, we refer to them by their first names for clarity. We intend no disrespect.

nonintervention will, (3) the trial court improperly considered the actions of Norman's former attorney, and (4) the trial court's findings of fact and conclusions of law are unsupported and fail to support its property division. We reject the first three assignments of error and, as to the fourth, hold that the findings of fact are insufficient only on the issue of the trial court's partition of the trust property. We deny both parties' requests for an award of attorney fees and costs on appeal, and remand for the entry of additional findings. We retain jurisdiction.

## FACTS AND PROCEDURAL BACKGROUND

In 1984, Gordon Larson passed away, survived by his wife Clara Larson, his son Norman Larson, and his daughter Connie Mitchell. At the time of his death, Gordon and his wife Clara owned 480 acres of farm ground in Spokane County. Under the terms of his will, Gordon's undivided one-half interest in the farm ground acres passed to Clara, as trustee of a credit shelter trust ("the Gordon Larson trust" or "the trust"). Clara was appointed personal representative of Gordon's estate and was the trust's sole income beneficiary. The will provided that upon Clara's death, Norman, as successor trustee, was directed to distribute the trust's assets "in equal shares to [Gordon Larson's] children," or if a child was no longer alive, "to his or her children per stirpes." Clerk's Papers (CP) at 83.

In 2002, in order to facilitate her estate planning, Clara partitioned her own and the trust's farm ground in her dual capacities as owner of her community property interest

2

and trustee of Gordon's community property interest. The trust and Clara each received title to 240 of the 480 acres. The following illustration (iterations of which are used hereafter) is our own, and roughly depicts the parcels based on exhibits from the record below. The shaded parcels are those deeded to Clara, and the unshaded parcels are those deeded to the trust:

| 27024.9007 *40 acres* | 27024.9008 *40 acres* | 27013.9006 *80 acres* | 27013.9005 *40 acres* |
|---|---|---|---|
| 27024.9009 *80 acres* | | | 27013.9007 *40 acres* |
| | | 27122.9007 *80 acres* | 27122.9006 *40 acres* |
| | | | 27122.9008 *40 acres* |

Clara died in October 2015. Her will gave Connie one-half of Clara's cattle, all of the estate's net cash (including cash on hand, in bank accounts, and received from annuities and life insurance policies), and forgiveness of any debt owed by Connie at the time of Clara's death. It gave Norman all of Clara's real property, all farm equipment

3

and vehicles, the other one-half of Clara's cattle, and all remaining real and personal property. In late October 2015, the will was admitted to probate and Norman was appointed personal representative with nonintervention powers.

Sometime after December 2015, attorney Richard Algeo, who represented Norman in his capacity as personal representative of Clara's estate, began to feel uncomfortable in his dealings with Norman and Connie, who were not getting along. Upon Mr. Algeo's suggestion to seek new counsel, Norman retained attorney Brant Stevens to represent him individually sometime during spring 2016. Connie retained attorney Steve Hughes.

In early May 2016, Mr. Stevens sent a letter to Mr. Hughes notifying him that he interpreted the terms of Gordon's will as providing that upon Clara's death, the trust assets would pass to her estate. Since she had left all of her real property to Norman, Mr. Stevens stated "it is our position that Norman . . . deed all of the property to himself." CP at 246. Mr. Hughes responded with his own letter a few days later, explaining his disagreement with Mr. Stevens.

In June 2016, Mr. Stevens wrote another letter, this time to Mr. Algeo and Mr. Hughes, explaining that he now believed that some of Clara's financial assets fell within the gift to Norman of personal property rather than the gift to Connie of cash on hand. Citing his disagreement with Mr. Hughes over the terms of the Gordon Larson trust and

Clara's will, Mr. Stevens stated "I hope to have a motion to clarify filed in a couple of weeks." CP at 260 (some capitalization omitted).

On June 24, 2016—nine months having passed since Clara's death triggered the termination of the Gordon Larson trust—Connie filed a TEDRA petition, seeking the following relief:

1. To declare the intent of the Testamentary Trust created by the Last Will and Testament of Gordon E. Larson with respect to the agricultural property owned by Gordon E. Larson at the time of his death.
2. To require a full accounting of the Testamentary Trust created by the Last Will and Testament of Gordon E. Larson, deceased.
3. To award Petitioner Connie M. Mitchell damages to which she may be entitled.
4. To award Petitioner Connie M. Mitchell her reasonable attorney fees and costs.
5. For further and additional relief as the Court may deem appropriate.

CP at 18-19.

A few weeks later, Mr. Stevens, acting for Norman, filed a "Motion for Instruction/Approval" in the probate action for Clara's estate. The motion sought the court's "instruction and approval to divest the remaining principal of the Trust to the Estate of Clara Larson." CP at 39. It also asked that Norman be awarded one-half his attorney fees from Connie. *Id.* Mr. Stevens set the motion for hearing for the morning of July 29.

5

On July 27, Mr. Algeo, having become aware of the motion for instruction and having learned that Norman was unhappy with Mr. Stevens and had fired him, filed a notice of appearance in the probate action and struck the motion.

Sometime prior to October 24, 2016, attorney J. Scott Miller appeared as Norman's individual counsel in the probate and TEDRA matters. A stipulated order to consolidate the two matters was filed in the actions on November 16, 2016. The lawyers for the parties jointly represented in the stipulated order that "both actions present common questions of law and fact which can conveniently be tried together without prejudice to any party." CP at 46.

One month later, on December 21, Norman filed a notice of a proposed plan of final distribution of the farm ground owned by the Gordon Larson trust. The notice stated, "Taking into consideration the severe animosity that exists between Norman Larson and Connie Mitchell, the Successor Trustee elects to make a nonpro rata [sic] distribution . . . as authorized by RCW 11.98.070(15)." CP at 50.

A revised iteration of our parcel illustration now (1) includes only parcels belonging to the trust, (2) refers to the parcel numbers by their last four digits, since we can use that shorthand for the trust parcels without risking confusion, and (3) marks with an "X" the approximate area on parcel .9006 where an old house is located, in which Connie had lived off and on for years. The shading shows Norman's proposed division:

he proposed to split parcel .9007 into two 40 acre parcels and deed the shaded parcels or

portions to himself and the unshaded parcels or portions to Connie:

.9009
*80 acres*

.9007
*80 acres*

*North 40*

X

.9006
*40 acres*

.9008
*40 acres*

*South 40*

Norman's notice stated that "[a]ny beneficiary has the right to object to the proposed plan

of distribution" and that a failure to raise an objection within 30 days of the notice

"results in the proposed distribution being approved and final."  CP at 50-51.  Connie

filed an objection on December 29.

In April 2017, Mr. Miller wrote Mr. Hughes to demand that Connie pay $187,200

in back rent to the Gordon Larson trust for living in the house on parcel .9006.  Norman

took the position that while Clara's will forgave Connie's debts to Clara, it did not

forgive debts to the trust.

In June 2017, Norman filed a motion for summary judgment on the following issues:

- That Connie's TEDRA action was a creditor claim or will contest, which had not been filed within the four-month limitations period provided by RCW 11.40.051 and RCW 11.24.010,

- That her action was barred by a no-contest provision in Clara's will, and

- That Norman's proposed division of the trust property was a matter within his authority as successor trustee and should be enforced by the court.

Norman also sought an award of attorney fees and costs.

Connie responded by opposing the motion and by petitioning for Norman's removal as personal representative. As fiduciary breaches, Connie alleged that Norman had "retaliate[ed] in various ways against Connie Mitchell; by attempting to collect hundreds of thousands of dollars from Connie Mitchell, which were forgiven by the Last Will and Testament of Clara V. Larson and by wasting the estate and trust assets by continuing to litigate frivolous and unfounded claims against Connie Mitchell." CP at 204.

Norman's motion for summary judgment and Connie's petition to remove him as personal representative were heard by the trial court in early July 2017. The court took the matters under advisement, later notifying counsel by electronic mail that the motions would be denied. Shortly before trial, it formalized the denial with an order finding

8

"[t]here are genuine material facts in dispute" with respect to Norman's summary judgment motion. CP at 440.

At a one-day bench trial, the court heard testimony from Norman, Connie, Mr. Algeo, and a real estate broker, Stephen Barrett, who, at Norman's request, had prepared a broker's price opinion in 2016 on the price at which several packages of the parcels could be sold.

Norman testified during the trial that while he had hired Mr. Stevens to represent him initially, he believed that Mr. Stevens went too far when he attempted to claim all the real property, certificates of deposit, and other cash-like assets. He testified that he believed the farm ground should be divided between himself and Connie based on value, and that Connie should have to pay rent for living in the house owned by the Gordon Larson trust.

Connie testified that she had lived in what the parties agreed was a 100-year-old house on parcel .9006 off and on since 1992. She testified she had improved the parcel by building two barns and remodeling the house. She had also almost finished drilling a well on the parcel and, as of the time of trial, had spent about $30,000 on that improvement. She testified that the house was in poor condition following a partial

collapse of the foundation that had prevented her from using the furnace for heat since January. She had received an estimate from a contractor that it would cost $20,000 to repair the foundation. She testified that she would like to see the land divided so that each party had a contiguous piece.

Mr. Barrett testified to the broker's price opinion for the property he had prepared in 2016. He described a broker's price opinion as "basically an estimate of a likely selling price if the property were put up for sale." Report of Proceedings (RP) at 146. He had arrived at a $525,000 price opinion for all 240 acres owned by the trust.

In his initial report, which was marked and admitted as exhibit R104, Mr. Barrett had provided price opinions for the division that Norman proposed to Connie in December 2016. He concluded that the property Norman proposed to deed to Connie (parcel .9006 and the north half of .9007, referred to in his report as "Parcel A") could be sold for $250,000. The property Norman proposed to deed to himself (parcel .9008, the south half of .9007 and .9009, referred to in his report as "Parcel B") could be sold for $375,000. Ex. R104 at 15-16.

Mr. Barrett testified he was asked by Mr. Miller to price other allocations, and did so in a supplemental report. The additional allocations were addressed, in part, to Connie's request that she receive contiguous parcels .9006 and .9008. We produce our parcel illustration once again and add a depiction of Austin Road to better illustrate the values arrived at by Mr. Barrett in this supplemental report:

10



Mr. Barrett expressed the opinion that a package of parcels .9006 and .9008 could be sold for $265,000. He expressed the opinion that parcel .9007, if treated as landlocked because lacking access to Austin Road, could be sold for $110,000. He clarified that he was saying that would be the value "if" it was landlocked, but he was not saying it *was* landlocked; he acknowledged that it would not be landlocked in the hands of Norman, who owned the parcel to the north. Finally, he expressed the opinion that parcel .9009 could be sold for $140,000.

Mr. Barrett acknowledged that without a well, parcel .9006, on which the old house was located, would likely be worth less than his price estimate. He testified that his price estimate for parcel .9006 took into consideration Connie's improvements to the property, which he believed equated to about $30,000 or $50,000 in value. He testified

that he did not take into account the cost to repair the foundation damage to the old

house, and the cost of repair might equal the house's value.

At the conclusion of the testimony and closing arguments, the trial court stated

that it was "not certain that what's been proposed by either side makes any sense . . . .

And I'm distressed that the only witness on an expert basis never valued the present

parcels, by his own testimony, as they exist today." RP at 226. It acknowledged "the

desire to not have two borders between brother and sister in this circumstance," adding,

> I really don't see equal shares coming out between 80 acres being given to
> one side or the other, with 40 acres being the balance left to his sister or her
> brother.
>     So I'm going to take this under advisement. I will have a decision
> for you by the end of this week. And it's my plan to address all of the
> matters that are before the court, if that's possible, based on the evidence
> that I have to resolve this for both of you.

*Id.*

The trial court later prepared and entered its own findings of fact and conclusions

of law. Based on its findings and conclusions, it ordered Norman as personal

representative of Clara's estate to pay himself $662.50 for his services, reimburse himself

for costs advanced on behalf of the estate of up to $250.00, retain a $5,000.00 reserve to

finalize the probate, and disburse the remaining cash or cash equivalents in the estate to

Connie. It ordered Norman as trustee of the Gordon Larson trust to quitclaim to Connie

the parcels the court was awarding to her, which are the unshaded parcels or portions on

this further iteration of our parcel illustration:



Norman moved for reconsideration, arguing that under the then-recent decision in

*In re Estate of Rathbone*, 190 Wn.2d 332, 412 P.3d 1283 (2018), the trial court did not

have jurisdiction over Clara's nonintervention will. He also argued that his motion for

summary judgment was improperly denied and that the trial court's findings and

conclusions were incomplete and incorrect.

The trial court entertained oral argument of Norman's motion and denied it. In

orally ruling, the court said the following about the distribution of property:

> The distribution of the properties addressed some, what I would argue are factual shortcomings based on the presentation of counsel. With regard to the distribution of assets and the requirement of having counsel and the issue being so strongly litigated for well over a year, and we're now here—I think the case was first assigned to this court in January of 2017, so we're now nearly 18 months out, with all the expenses and all the time and all the consumption that has gone on there.
> So rather than—because the estate had at that point paid and was, as you indicated, cash poor, the court did what I felt was fair and just and

equitable under the circumstances in terms of reaching the orders that I did, including the orders relative to the parcels.

RP at 246. Norman appeals.

ANALYSIS

Norman makes four assignments of error and devotes a section of his brief to findings of fact and conclusions of law that he contends are not supported by evidence.

Two of his assignments of error can be summarily rejected. The first is his contention that the trial court improperly denied his motion for summary judgment. Generally, the "denial of summary judgment cannot be appealed following a trial if the denial was based upon a determination that material facts are in dispute and must be resolved by the trier of fact." *Johnson v. Rothstein*, 52 Wn. App. 303, 304, 759 P.2d 471 (1988). Following the denial of summary judgment and a subsequent trial on the issue, "the losing party must appeal from the sufficiency of the evidence presented at trial, not from the denial of summary judgment." *Adcox v. Child.'s Hosp. & Med. Ctr.*, 123 Wn.2d 15, 35 n.9, 864 P.2d 921 (1993). The trial court denied Norman's motion for summary judgment because it found genuine issues of material fact. Norman can appeal only from the trial, not the order denying summary judgment.

Much of Norman's argument addressed to this assigned error challenges the rejection *at trial* of his proposed division of the property. This argument parallels his

challenge to the trial court's conclusion that his actions fell below his duties as a trustee. The latter issue was preserved and will be reviewed.

The second assignment of error that can be summarily rejected is the argument that the trial court had no jurisdiction to construe Clara's will. A trial court's authority over a nonintervention will is limited by statute. *In re Estate of Jones*, 152 Wn.2d 1, 9, 93 P.3d 147 (2004). After a nonintervention will has been declared solvent, a trial court has no further "role in the administration of the estate except under narrow, statutorily created exceptions that give courts limited authority to intervene." *Rathbone*, 190 Wn.2d at 339. This limited authority can be regained "only if the executor or another person with statutorily conferred authority properly invokes it." *Id.*

*Rathbone* has no application. Norman does not assign error to the court's orders regarding the expenses to be paid, the reserve to be maintained, and the distributions to be made by him as personal representative to wrap up the estate. If he had, we would readily find that his motion for instructions invoked the probate court's jurisdiction, and his stipulation to consolidation with the TEDRA action enlarged the court's jurisdiction to include all matters tried to the court. *See In re Estate of Megrath*, 142 Wash. 324, 326-27, 253 P. 455, 256 P. 503 (1927) (executor with nonintervention powers may invoke the jurisdiction of the probate court).

The issues on appeal concern Norman's duties as successor trustee of the Gordon Larson trust, not as the personal representative of Clara's estate.

15

Considering the parties' briefing and oral argument of the appeal, the issues that remain are as follows:

Is the trial court's conclusion that positions taken by Norman fell below the duties owed by him as a trustee supported by the court's findings of fact, and are its findings of fact supported by substantial evidence?

Did the parties essentially stipulate that the trial court would make its own division of the farm ground held by the Gordon Larson trust?

Is the trial court's order dividing the property supported by its findings of fact and conclusions of law?

We address the issues in that order.

I.   THE TRIAL COURT'S CONCLUSION THAT POSITIONS TAKEN BY NORMAN AND HIS COUNSEL BREACHED HIS DUTY AS A TRUSTEE IS SUPPORTED BY ITS FINDINGS, WHICH ARE SUPPORTED BY SUBSTANTIAL EVIDENCE

The following findings of fact by the trial court bear on its conclusions of law that a breach of fiduciary duty by Norman was demonstrated:

12.  Clara V. Larson passed away October 9, 2015 and her will was admitted to probate in Spokane County under Cause No. 15-4-01520-8;
. . . .
19.  In the spring of 2016, Gordon D. [sic] Larson retained Brant L. Stevens as his independent advisor;
20.  Brant L. Stevens, as attorney for Gordon D. [sic] Larson, wrote a letter to Steve Hughes, attorney for Connie M. Mitchell, on May 5, 2016, providing that his analysis of Gordon's Trust and Clara's Will determined that all property in Gordon's Trust passed to Clara's Estate and therefore should be deeded to Norman D. Larson;
21.  Norman D. Larson, after discussing the advice of Brant L. Stevens with the Estate's lawyer, Richard P. Algeo, determined to follow the advice of his lawyers;
22. On May 10, 2016, Steven W. Hughes, as counsel for Connie M. Mitchell, responded to Brant L. Stevens, expressing a different legal conclusion and advising that a TEDRA action would be filed in the event

16

an agreement could not be reached reflecting residuary beneficiary status for Connie M. Mitchell under Gordon's Trust because of the death of Clara;

23. On June 24, 2016, Brant L. Stevens as attorney for Norman D. Larson, wrote a letter to Richard P. Algeo and Steven W. Hughes, asserting different interpretations of Gordon's Trust and Will existed and promising a Motion to Clarify;

. . . .

25. On July 14, 2016, Brant L. Stevens, as "Attorney for Norman Larson, Successor Trustee," filed a Motion for Instruction/Approval relating to distribution of any real property holdings of Gordon's Trust, asserting that it should all be expeditiously distributed to Norman D. Larson and seeking attorney fees;

26. Thereafter, Norman D. Larson, again consulted with Richard P. Algeo and determined to terminate the employment of Brant L. Stevens in this matter;

. . . .

29. On February 13, 2017, an Answer to the TEDRA Petition was filed on behalf of Norman D. Larson and on February 16, 2017, an Amended Answer was provided seeking: affirmation of the Successor Trustee's Proposed Plan of Distribution; dismissal of the TEDRA Petition with Prejudice; an award of attorney fees and costs; an award of reasonable rental value from Connie M. Mitchell for the house, outbuildings and property she utilized as her home; and, for an award of general damages for Norman D. Larson;

. . . .

33. It was acknowledged by all parties that the house where Connie M. Mitchell resided, belonged to Gordon's Trust, of which she was a residuary beneficiary;

34. No one disputed that the house which Connie M. Mitchell had been using as her home was damaged when a lower wall collapsed, damaging the furnace and causing the residence to be unsafe;

35. Norman D. Larson continued to maintain that Connie M. Mitchell should be ordered to pay some amount of rent to Gordon's Trust.

CP at 458-60.

Norman makes no assignment of error to findings 12, 16, 33, and 35, which are

verities on appeal. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). His only

assignment of error to finding 19 is his well-taken position that it includes a scrivener's error in stating that "Gordon D." rather than Norman, retained Mr. Stevens. (Finding 20 includes the same error.) We deem finding 19, as corrected, as a verity. Of the remaining findings of fact reproduced above, Norman challenges findings 20 through 26, 29, and 34.

"An appellate court will uphold challenged findings of fact and treat the findings as verities on appeal if the findings are supported by substantial evidence." *Jones*, 152 Wn.2d at 8. "'Substantial evidence' is evidence sufficient to persuade a fair-minded person of the truth of the asserted premise." *Young v. Toyota Motor Sales, U.S.A.*, 9 Wn. App. 2d 26, 32, 442 P.3d 5 (2019). Since the trial judge has the witnesses before it and can evaluate, first hand, the weight and credibility assessable to their testimony, we will not substitute our own judgment even though we might have resolved the factual dispute differently. *State v. Russell*, 73 Wn.2d 903, 910, 442 P.2d 988 (1968); *Brown v. Super. Underwriters*, 30 Wn. App. 303, 305-06, 632 P.2d 887 (1980).

Norman does not identify anything about the challenged findings that is incorrect. He points out that three pieces of correspondence referred to in findings 20, 22, and 23 were not offered or were not entered into evidence during trial. Each had been submitted as evidence in connection with the summary judgment motion, however, and they remained a part of the court file. They were addressed in testimony or argument during the trial and were a proper matter for judicial notice. ER 201; *Swak v. Dep't of Labor &*

*Indus.*, 40 Wn.2d 51, 53, 240 P.2d 560 (1952) (a court generally may take judicial notice of court records in the same case).

The remainder of the trial court's findings are challenged as incomplete because, e.g., they do not describe *why* Norman terminated Mr. Stevens's employment as his lawyer, or the fact that Connie did not pay rent for the old house on parcel .9006, or the fact that Clara's will did not state that she was forgiving debt (if any) owed to the Gordon Larson trust. "A trial court is not required to make findings of fact on all matters about which there is evidence in the record. Only those findings which establish the existence or non-existence of determinative factual matters need be made." *Maehren v. City of Seattle*, 92 Wn.2d 480, 487-88, 599 P.2d 1255 (1979).

Norman takes particular umbrage at the trial court charging him with the actions of Mr. Stevens. Yet "[u]nder agency law, the general rule is that if an attorney is authorized to appear on a client's behalf, the attorney's acts are binding on the client." *Ha v. Signal Elec., Inc.*, 182 Wn. App. 436, 447, 332 P.3d 991 (2014). Once an attorney has been designated to represent a client, "the court and other parties to an action are entitled to rely upon that authority until the client's decision to terminate it has been brought to their attention." *Russell v. Maas*, 166 Wn. App. 885, 889, 272 P.3d 273 (2012). Although Norman eventually became uncomfortable with positions being taken by Mr. Stevens, the fact remains that Mr. Stevens was hired by him and remained his authorized counsel of record for some 12 weeks, during which Mr. Stevens took

unreasonably aggressive actions to which Connie, through counsel, was forced to respond. At trial, Mr. Algeo testified that even as late as July 27, 2016, he listened to a voicemail from Mr. Stevens stating that Norman had authorized him to proceed with the July 29 hearing on the motion for instructions. It was the role of the trial court, not our role, to weigh the evidence and decide whether Mr. Stevens's actions while employed and acting on behalf of Norman were determinative facts.

If the findings are supported by substantial evidence, the next question is "whether the findings in turn support the trial court's conclusions of law and judgment." *Holland v. Boeing Co.*, 90 Wn.2d 384, 390, 583 P.2d 621 (1978). Portions of three of the trial court's conclusions of law are relevant:

> D. Trustees must execute their duties with the highest degree of good faith, diligence and undivided loyalty to the beneficiaries (In re Estate of Ehlers, 80 Wn. App. 751[, 911 P.2d 1017] (1996));
> E. Norman D. Larson's assertions, through counsel, that all real property in Gordon's Trust passed to him following Clara's death . . . and that Successor Trustee duties required a claim for rent be asserted on behalf of Gordon's Trust (either throughout Connie M. Mitchell's occupation of the subject home or from the date of Clara's death to the present) all fall below the degree of good faith, diligence and undivided loyalty owed by the Successor Trustee and/or the Personal Representative in this situation;
> . . . .
> G. Norman D. Larson failed to take reasonable steps to value the 240 acres of farmland for partition until after Connie M. Mitchell felt compelled to file a TEDRA petition in response to Norman D. Larson's announced positions as Personal Representative and Successor Trustee.

CP at 472-73.

The unreasonable position that Norman was required to distribute all of the trust

assets to Clara's estate, and thereby to himself, was a decision for Norman as successor

trustee of the trust. The same is true of his rejected position that Connie was obliged to

pay back rent for the old house. The trial court's findings that he took these unreasonable

and self-serving positions, and that he delayed in taking reasonable steps to value the

property so that it could be distributed, support the trial court's conclusions of law.

II.    IN THE EVENT NORMAN'S PROPOSED DIVISION WAS NOT APPROVED, HE SUBMITTED
       THE PARTITION DECISION TO THE COURT

Norman's trial brief stated that "[b]ecause it is impractical for the siblings to

continue in joint ownership, the parcels owned by the Trust must be partitioned." CP at

404. It reminded the trial court of Norman's proposal for division of the farm ground and

that Connie wanted all the land along Austin Road. It asked the trial court to endorse

Norman's proposed allocation and distribution. It added, "Critically important is the fact

that the Trust has no assets other than real property. If the Court were to grant Connie

Mitchell's request to hire a professional Trustee, the Trust property would have to be sold

to pay that person." CP at 406.

During Norman's testimony, he told the court that "[a]ll three lawyers, Algeo,

Miller, and Stevens, told me, if we went before a judge, like you, Your Honor, that they

would probably divide the property based on its dollar value." RP at 49. Later, he

testified that when he hired a lawyer it was to settle the trust and divide the property, "to

21

come before a judge, because we can't agree, like we're doing today, and divide the

property." RP at 54.

In closing argument, Mr. Miller responded to Mr. Hughes's continuing suggestion

that Norman be removed and replaced with an independent trustee by arguing that if

Norman's proposal was not endorsed by the court, the court should divide the property:

> So as far as what a new trustee is going to do, I honestly don't understand what that is. I thought that's what we were deciding here today. The trustee is to decide the division of property. If all you're being asked to do is fire Mr. Larson and appoint a new trustee, then we just spent an entire day doing a whole bunch of wasted time.
> I think that you have adequate information in front of you to make the determination about whether or not you divide it the way Mr. Larson suggested, or the other alternative is—I don't know what the other alternative is. I suppose you could go with Ms. Mitchell's version where she gets all the money and all the land that has any value, and that's somehow fair; those are equal shares. I don't think that Mr. Larson intended the two children to come up with equal amounts of property, or he would have said that. That isn't what he said. He said equal shares.

RP at 219-20. Later, he argued:

> Mr. Larson has not been running around spending money that belongs to anybody, does not belong to him. He has not been spending it on himself. He's been spending it on this case. And so this case needs to get over. If you want to kick him out, then there are going to be a whole lot more expense. And it's not his fault.
> So that's all we ask, is that the court acknowledge, or recognize, rather, that it's unreasonable for Ms. Mitchell to get all the land and all the money and leave the scrub pines and rocks to Mr. Larson, who was given the very unenviable task of dealing with dividing up the trust property. Thank you.

RP at 223.

Connie's counsel responded:

> Whatever the court does on this will be right, Judge, because under TEDRA, I can tell you that the Supreme Court wants to put it all on your shoulders. They don't want to see it again. And I've been there. And I just think if we got somebody that's got clear-eyed who will make a fair division, even if there's an equalizing payment at some point, that would be fine, but to get back to zero, Judge. . . .
>
> . . . .
>
> The statute does not take away the right of Gordon Larson to determine how his property is to be divided. It was to be divided equally. And that's got to get done one way or the other. I'm not sure what that means. We don't have him here. But we do want to get to this without having to litigate any further, Judge.

RP at 224-25.

The court concluded by saying it would take the case under advisement, adding:

> And it's my plan to address all of the matters that are before the court, if that's possible, based on the evidence that I have to resolve this for both of you, pending your decision to file an appeal, I guess.

RP at 226. Neither party objected.

Where an action is not instituted as one for partition, but the court and counsel treat the case as one in which commonly held property will be divided, the pleadings are treated as amended to conform to the proof. *Von Herberg v. Von Herberg*, 6 Wn.2d 100, 119, 106 P.2d 737 (1940). A trial court's authority to order the equitable remedy of partition in a TEDRA proceeding is supported by statute. The legislature intends that "the courts shall have full and ample power and authority . . . to . . . settle . . . [a]ll trusts and trust matters," RCW 11.96A.020(1)(b), with "full power and authority to proceed

23

with such administration and settlement in any manner and way that to the court seems right and proper, all to the end that the matters be expeditiously administered and settled by the court." RCW 11.96A.020(2).

After the trial court's findings, conclusions and order divided the farm ground, Norman moved for reconsideration, but he did not argue that the issue of partition had not been submitted for decision by the court. He has not assigned error on appeal to the trial court's authority to divide the farm ground. The trial court had the authority to divide it.

III.    THE TRIAL COURT'S FINDINGS ARE INSUFFICIENT FOR PURPOSES OF APPELLATE REVIEW

Partition is an equitable action. *Kelsey v. Kelsey*, 179 Wn. App. 360, 365, 317 P.3d 1096 (2014) (citing *Leinweber v. Leinweber*, 63 Wn.2d 54, 56, 385 P.2d 556 (1963)). "The trial court has 'great flexibility' in fashioning equitable relief for the parties." *Id.* (quoting *Cummings v. Anderson*, 94 Wn.2d 135, 143, 614 P.2d 1283 (1980)). The trial court's discretion extends to its valuation of property in a partition action. *Id.* (citing *Yeats v. Estate of Yeats*, 90 Wn.2d 201, 206, 580 P.2d 617 (1978)).

A court abuses its discretion if its decision is not based on tenable grounds or tenable reasons. *Id.* For us to meaningfully review whether a trial court has abused its discretion, a trial court's findings of fact must declare the ultimate facts that justify its conclusions; if they do not, an appellant is entitled to have the cause remanded for

additional findings so that appellate review is possible. *Phelps v. Phelps*, 2 Wn.2d 272, 276, 97 P.2d 1080 (1940).

Here, neither the trial court's findings nor its conclusions provide any explanation of the manner in which it divided the property. To begin with, there are no findings regarding the value of the property distributed, either on a parcel by parcel basis, or based on each party's distributed share. We recognize that the evidence of value presented at trial was not as helpful as it might have been. But the trial court did have assessed values, some broker price opinions, and a range of per acre values from Mr. Barrett. Mr. Barrett also identified the amount of tillable land and on each parcel. Precise values are not required, but *some* values will at least demonstrate whether the trial court applied values consistently.

There was testimony that there were improvements to parcel .9006 that were paid for by Connie, in some cases with funds loaned by Clara. There are no findings on the disputed issue of whether, in light of the improvements, the trial court should increase or decrease the value of that property as distributed to Connie.

The property was distributed in a manner different from the proposals of both parties. There are no findings explaining the variations, and whether, and to what extent, those variations were viewed by the trial court as benefitting one or the other party.

The trial court's conclusions state that it had discretion to award reasonable attorney fees and costs, and in ruling on the motion for reconsideration the court implied

that the delay and cost of the litigation to Connie was a factor in its distribution. If part of the property distribution was intended as a means of awarding attorney fees against assets of the trust, there is no finding on that score, and no identification of the amount of value explained by any such award.

Lacking findings on these matters, we are left to speculate, making it impossible to fulfill our responsibility to provide appellate review. We remand for the entry of additional findings.

Both parties request an award of attorney fees and costs on appeal. We decline to award fees and costs to either party.

We retain jurisdiction so that, should further appeal be required, the time and expense to the parties can be minimized.

We remand for further proceedings consistent with this opinion.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____        _____
Lawrence-Berrey, C.J.                    Pennell, J.